## THE ELECTRA.

(District Court, S. D. New York. August 7, 1905.)

COLLISION—STEAM VESSELS MEETING—FAILURE TO CARRY OUT PASSING AGREEMENT.

     A steam yacht and steam lighter which came into collision near the Brooklyn shore after exchanging signals to pass to the right each *held* in fault for taking no measures to carry out the passing agreement until too late. The lighter was at the time turning, and continued her swing, which brought her across the yacht's course, while the latter did not stop or change her course until immediately before the collision.

In Admiralty. Suit for collision.

James J. Macklin, for libellant.
Harris & Towne and Lawrence Kneeland, for claimant.

ADAMS, District Judge. This action was brought to recover the damages suffered by the libellant through a collision between his steam lighter Dana and the steam yacht Electra, which occurred in the Red Hook Channel to the westward of the Erie Basin on the 22nd day of September, 1904, about 4:30 o'clock p. m. The stem of the yacht struck the port side of the lighter, doing considerable damage. The lighter was bound from pier 26 East River to the pier at the foot of 43rd Street, South Brooklyn, and the yacht was bound from the North River to the foot of Court Street, South Brooklyn. The tide was about half flood.

The Dana was a twin screw lighter 95 feet long with double engines. Her pilot house and engines were well aft. She was light, drawing 1½ to 2 feet forward and 6 feet aft. The Electra was a single left hand screw steamer, about 175 feet long.

When the lighter was proceeding to her destination, and was about 300 feet from the shore, her attention was called by a danger whistle, to a sister boat, the Valiant, which was in trouble with a mud digger anchored in the channel about 600 feet out from the Erie Gap. This digger had two cables, each about 1000 feet long, stretching out from her corners and extending to the southward and westward in the channel. The Valiant, with a car float in tow alongside, had become fast on one of the cables, and the Dana, rounded to to go to her assistance. She backed her starboard engine and worked the other ahead. This operation enabled her to make a quick turn. When she was about half way round, she noticed the yacht, on her own starboard side, 800 or 900 feet away, proceeding down the westward part of the channel, showing her port side. The yacht also saw the lighter and blew her a signal of one whistle, to which the lighter answered with one and continued her swing. At this point there is a discrepancy between the vessels, the lighter contending that she was then far enough around to show her port side to the yacht. The latter's witnesses say that the lighter then showed her starboard side to the yacht. I think the yacht is right in this contention.

The decision turns upon the question, which of the vessels failed in her duty under the agreed course, or whether both did so. At the close of the trial I said:

"* * * It seems to me that this boat, the Dana, could not have made any such turn as is claimed. I think she must have gone further to the westward. She could not turn right around on a pivot. And the testimony on the other side is all against it.

I am rather inclined to believe that she was crossing the course of the yacht; that she was not going in that direction but that she did actually get so that she was across the stem and was all of the time swinging.

But of course the parties had agreed on a one whistle course, which was initiated by the Electra, and the Electra did not do anything to carry out the manœuvre. She perhaps expected the other vessel to do everything that was required to be done. Whether she was justified in expecting the other vessel to turn quickly enough to render cooperation on her own part unnecessary is something I will have to consider."

I have since examined the testimony and it now seems to me that the courses having been arranged, it was the duty of each vessel to do what was necessary to carry out the agreement. The Electra did nothing efficient until the collision became imminent when she reversed her engine, the effect of which was to turn her bow to port, toward the Dana. Before the vessels came together, the latter had completed her turn, so that she was showing her port side to the yacht, and the collision happened on that side. The Electra claims that there was not enough water in the channel to permit her to go further to the starboard; that she was going very slowly and reversed in time to overcome her motion before the collision. I think it is true, excepting the latter. She was probably still going ahead a little when the vessels came together. The lighter was undoubtedly under motion at that time. The agreement required the Electra to so manœuvre as to keep to the right. The only way she could do so was to stop and back sooner than she did. In failing in such respect, she was primarily in fault for the collision.

It seems to me that the lighter was also in fault because she kept moving ahead, and to the starboard, into the collision, notwithstanding it was obvious that the yacht was not going to keep out of the way. The Dana's mistake was that her navigator thought she could turn sooner than apparently was possible. She failed to properly calculate the distance and took the chance of clearing the yacht.

Decree for the libellant for half damages, with an order of reference.